## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ELISE BENTLEY, | : | CASE NO. _____ (___) |
| **Plaintiff,** | : | |
| v. | : | |
| GREENSKY TRADE CREDIT, LLC, | : | **JURY TRIAL DEMANDED** |
| TRI-STATE OF BRANFORD, LLC | : | |
| BRAD POMPILLI, AND DAN ROE, | : | |
| **Defendants.** | : | **AUGUST 8, 2014** |

### PRELIMINARY STATEMENT

1. This case arises from the fraudulent actions of Defendants who forged Plaintiff's name and signature on a credit application and obtained Plaintiff's credit information under false pretenses for the purpose of offering and granting her financing for a home improvement contract in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et al. seq. The Plaintiff also asserts pendent state law claims against Defendants for the violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a et seq., arising from Defendants' unfair and deceptive acts or practices in the conduct of their trade and commerce as home improvement contractors and lenders.

### JURISDICTION AND VENUE

2. The Court has federal question jurisdiction over this consumer claim pursuant to 15 U.S.C. §1681p, 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

3. Venue is proper in the United States District Court, pursuant to 28 U.S.C. §1391 (a), (b) and (c), because Defendants are located in Connecticut or regularly do business in

Connecticut and because the home improvement transaction alleged herein occurred in

this state. Venue is also proper in this District because Defendants' contacts with this

District are sufficient to subject them to personal jurisdiction here.

### PARTIES

4.      Plaintiff Elise Bentley ("Bentley" or "Plaintiff") is a natural person residing at 51

Robbins Avenue, Bristol, Connecticut 06010, and is a "consumer" as that term is defined

in 15 U.S.C. § 1681a(c).

5.      Defendant, Tri-State Branford, ("Tri-State" or "Defendant") is a company doing

business under the laws of Connecticut with Home Improvement Contractor registration

#0581042 and having a main office at 65-8 N. Branford Road, Branford, Connecticut

06405 and is a "person" as that term is defined in 15 U.S.C. §1681a(b) and, was at all

times the broker or agent of GreenSky Trade Credit, LLC.

6.      Defendant, Brad Pompilli, ("Pompilli" or "Defendant") is a home improvement

contractor doing business as Tri-State under the laws of Connecticut with Home

Improvement Contractor registration #0581042 and having a main office at 65-8 N.

Branford Road, Branford, Connecticut 06405, and is a "person" as that term is defined in

15 U.S.C. §1681a(b) and, was at all times the broker or agent of GreenSky Trade Credit,

LLC.

7.      Defendant, Dan Roe, ("Roe" or "Defendant") is a home improvement contractor

doing business as Tri-State under the laws of Connecticut with Home Improvement

Contractor registration #0581042 and having a main office at 65-8 N. Branford Road,

Branford, Connecticut 06405 and is a "person" as that term is defined in 15 U.S.C.

§1681a(b).

2

8. Defendant, GreenSky Trade Credit, LLC ("GreenSky" or "Defendant"), is a provider of customized installment loan/credit programs for wholesalers and retailers in the United States like for home improvement contracts, amongst others, doing business under the laws of Georgia and having a main office at 1797 Northeast Expressway, NE, Suite 100 Atlanta Georgia 30329, is a "person" as that term is defined in 15 U.S.C. §1681a(b), and was at all times relevant herein, the principal of its agents, Tri-State, Pompilli and Roe.

### COUNT ONE
(FACTS)

9. In July 2013, Tri-State mailed an advertisement postcard to Bentley which contained an offer to homeowners such as Plaintiff, of assistance to obtain up to $25,000 for home improvement under a federal program.

10. Bentley responded to the advertisement postcard by completing the form contained in the postcard and mailing the completed postcard back to Tri-State.

11. Subsequently Roe visited Bentley at her home in Bristol, Connecticut on Friday, August 2, 2013 to discuss how he and Tri-State would assist her apply for this home improvement federal program.

12. Bentley, believing she was applying to the federal government, signed an application document that had "GE Capital" on the application document for the home improvement federal program.

13. Roe completed the "Ge Capital" application document for Bentley, and she only appended her signed to the application document with the belief that the application document was for the federal government home improvement assistance program.

14. Mr. Roe said he and his company could offer financing but never mentioned

3

anything about GE Capital offering any financing.

15.    Bentley rejected Roe's offer of financing and in very clear terms Bentley told Roe she did not want any financing from him or anyone.

16.    Bentley repeated she simply wanted the federal assistance program offered in the Tri-State advertisement postcard.

17.    Roe never explained further other than to say "no problem."

18.    Roe insisted that Bentley should sign a transaction work quote document for the home improvement work which Bentley believed was simply a home improvement transaction "work quote."

19.    Roe also told Bentley he required a 10% down payment, which Bentley believed was to hold the "price quote."

20.    Roe then told Bentley that "there was no prepayment penalty."

21.    Bentley told Roe to obtain the federal government assistance program while she solicits quotes from other contractors and obtains the advice of her financial advisor.

22.    Roe explained nothing else to Bentley although she questioned Roe about the high interest rate on the "GE Capital" documents which Roe gave her to sign.

23.    Roe told Bentley he would transfer her information on the "GE Capital" application document onto other paperwork when he returns to the office.

24.    Roe never explained the nature of the other paperwork.

25.    Bentley believed she was applying for federal government assistance and any application or paperwork would be for the federal government assistance program.

26.    Roe never explained the content of the home  improvement work quote document either  nor the content of the notice of cancellation attached to the home improvement

4

work quote.

27.    Bentley told Roe she would get back to him after she consulted with her advisor and obtained quotes from other contractors.

28.    Bentley followed up as she stated and telephoned Roe on Wednesday, August 7, 2013 to let him know she received better quotes from other contractors with longer warranty terms for the home improvement work.

29.    It was at this time that Roe explained to Bentley for the first time, that she was bound to a contract with Tri-State in which her right to cancel ended the day before, on Tuesday, August 6, 2013.

30.    Roe never explained to Bentley during the meeting at Bentley's home on Friday, August 2, 2013, anything relating to the "Notice of cancellation" that was part of the home improvement work quote.

31.    Roe insisted during this telephone discussion of August 7, 2013 that Bentley was bound by the terms for the roofing repair as described in the transaction work document.

32.    Roe also told Bentley during this telephone discussion that she would be liable for a cancellation fee of 75% of $14,179.00 which amount represented the total cost of the work, if she did not continue with the home repair work as quoted.

33.    Bentley reminded Roe that she thought she only received a work quote from him and that the GE Capital application document she signed on August 2, 2013 was for the application to qualify for the federal government home improvement assistance program.

34.    Roe replied that the financing was the government offered program and that the financing of 3.9% with no prepayment penalty is what he can do to assist with the cost of the job.

5

35.     Bentley again explained to Roe during this telephone discussion that she did not need financing and that the cancellation terms or other terms of the home improvement contract were never discussed on August 2, 2013.

36.     Roe then told Bentley that she should telephone the owner of Tri-State to further discuss her matter.

37.     Bentley then concluded her discussion with Roe and telephoned Pompilli, owner of Tri-State on several occasions until she finally was able to talk to Pompilli on Friday, August 9, 2013, at which time, Pompilli told Bentley he was not in the office at that time but would return on August 12, 2013.

39.     On Monday, August 12, 2013, Bentley telephoned Pompilli and recorded the discussion during which Pompilli repeated the same statements Roe made to her, that she was bound to the contract, that she would be liable to pay a cancellation fee of 75% of $14,179.00, the quoted price, because Tri-State was already out of the cost of material and financing for the work.

40.     Bentley then told Pompilli that she didn't know how he could be out of the cost of material and financing when she specifically told Roe that she did not need financing and she was led to believe what she was working with Tri-State on was a federal government offering.

41.     Continuing in this recorded telephone discussion, Pompilli replied that the federal programs are at 7% interest and if she wanted to use that she could but that the 3.9% is offered though his company.

42.     Bentley told him that Roe did not review any of that with her.

43.     Pompilli said he would not argue and read to her the fine print on the transaction

6

work document that she would be charged 75% of the cost of the job.

44.     Bentley told Pompilli that she alone had the right to decide which contractor completes the work in her home.

45.     Pompilli replied that the lawyers would have to decide if she had such right.

46.     At all these times and dates before and during each telephone discussion on August 7, 2013 and on August 9, 2013,, neither Roe nor Pompilli ever discussed with Bentley that they and or GreenSky had made an inquiry with a credit reporting agency and obtained her credit report.

47.     Neither Roe nor Pompilli ever told Bentley they and or any employee of GreenSky completed an application for a home equity loan through their financing company, GreenSky Trade Credit, LLC, using her name and her personal information.

48.     Yet, on Friday, August 16, 2013, Bentley received in the mail, a letter from GreenSky congratulating her on her new "GreenSky Installment Loan," an open-ended home equity plan or a closed-ended variable-rate home equity plan.

49.     Bentley never applied for or completed any application for any loan with GreenSky or with Tri-State as she clearly rejected any financing from Tri-State when Roe offered financing on August 2, 2013.

50.     Bentley clearly told Roe on August 2, 2013 that she did not need financing from him or his company.

51.     GreenSky and its brokers and or agents, Tri-State, Roe and or Pompilli completed and or signed a GreenSky Installment Loan application for Bentley without her knowledge or authorization thereby violating Connecticut criminal statute, C.G.S. §53a-139: Forgery in the second degree: Class D felony, which states "(a) [a] person is guilty of forgery in the

7

second degree when, with intent to defraud, deceive or injure another, he falsely makes, completes or alters a written instrument....which is or purports to be, or which is calculated to become or represent if completed: (1) [a] .... contract, assignment, commercial instrument or other instrument which does or may evidence, create, transfer, terminate or otherwise affect a legal right, interest, obligation or status;....(c) [f]orgery in the second degree is a class D felony...."

52.     Furthermore, the Connecticut Home Improvement Act, C.G.S.§20-418 et seq., requires a contractor to state the transaction date on the Notice of Cancellation form of a home improvement contract, but the purported home improvement contract of August 2, 2013 omitted to sate the "transaction date" on the Notice of Cancellation form.

53.     The purported contract of August 2, 2013 is void for omitting to state the transaction date on the Notice of Cancellation form as required by the Connecticut Home Improvement Act, C.G.S.§20-418 et seq., more particularly the Connecticut Home Improvement Act, C.G.S.§20-429(e) and violated the Home Solicitation Sales Act, C.G.S.§42-135(a)(2).

54.     Furthermore, GreenSky and its brokers and or agents, Tri-State, Pompilli and Roe provided Ms. Bentley, without her applying for GreenSky home improvement loan, the GreenSky installment loan for $12,762 for the home improvement work, and sought to secure the installment loan by the equity in her residential property.

55.     The GreenSky Installment Loan contained an unconscionable interest rate between 17.99% and 23.99% despite representations by GreenSky's brokers and or agents, Roe and Pompilli, I one case in a recorded telephone discussion that the financing offered by Defendants was at an interest rate of "3.9%".

56.     GreenSky and its brokers and or agents, Tri-State, Pompilli and Roe never disclosed in advance to Bentley, or at any time before August 16, 2013, the terms, rates and condition of the GreenSky Installment Loan.

57.     GreenSky through its brokers and or agents, Tri-State, Pompilli and Roe also repeatedly misrepresented to Bentley that the interest rate they were offering her was only 3.9% when the GreenSky Installment Loan offered a much higher rate.

58.     GreenSky, through its brokers and or agents, Tri-State, Pompilli and Roe violated the Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., which requires full disclosures "at the time an application is provided to the consumer" for the home equity loan plan, 12 C.F.R. §226.5b(b) and or §226.19(b): GreenSky and or its brokers and or agents, Tri-State, Pompilli and Roe never provided any GreenSky Installment Loan application form and instead, Defendants completed and signed a GreenSky Installment Loan application using Bentley's personal information without her knowledge, authorization or permission and forged her signature on the GreenSky Installment Loan application.

59.     Defendants violated the Connecticut Home Improvement Act, C.G.S.§20-418 et seq., more particularly C.G.S.§20-429(e)(1), when Defendants, Tri- State, Roe and Pompilli omitted to state in the purported home improvement contract of August 2, 2013, information required to be disclosed such as the terms, rates and condition of the GreenSky Installment Loan, "at the time …[of] application…" for the GreenSky Installment Loan, pursuant to the Connecticut Truth-in-Lending Act, , C.G.S.§36a-675 to §36a-685.

60.     Furthermore, Defendants violated the Connecticut Home Improvement Act, C.G.S.§20-418 et seq., more particularly C.G.S.§20-429(e)(3), in that the purported home improvement contract together with its financing documents, the GreenSky Installment

9

Loan, contain a finance charge set at between 17.99% and 23.99%, a rate far exceeding the 12.00% allowed for such loans under C.G.S.§37-4 and C.G.S.§20-429(e)(3).

61.     On August 5, 2013 and on August 6, 2013 respectively, GreenSky and its agents, Tri-State, Pompilli and Roe knowingly and willfully and or negligently obtained information on Bentley from Transunion and Experian without her authorization or permission.

62.     As summary, Defendants misled Bentley to believe that a private home improvement loan scheme was a "federal government home improvement assistance program."

63.     Defendants completed and or signed a GreenSky credit application for Bentley without her knowledge or authorization, in violation of the Connecticut criminal statute C.G.S.§53-139: Forgery in the second degree: Class D felony.

64.     Defendants used the U.S. mail to send the false advertisement postcard offering to assist homeowners obtain up to $25,000 for home improvement through a federal program, in violation of 18 U.S.C. §1341.

65.     Defendants offered financing to Bentley without full disclosures at the time of the application and misrepresented the interest rate offered, in violation of TILA.

66.     Defendants misled Bentley to believe that her repeated statement that she did not need financing would be honored all the while knowing the Defendants planned to offer her their company's financing in dishonor of their implied acceptance of her statements.

67.     And, finally, Defendants violated the Connecticut Home Improvement Act by misleading Ms. Bentley about the contract and the notice of cancellation, the disclosures required for the home improvement contract, and the unconscionable finance charge..

## COUNT TWO
### (FCRA)

68.     Paragraphs 1-67 of count one are incorporated in this count two as if fully set forth herein.

69.     Each of the Defendants is a user of information about Plaintiff from one or more consumer reporting agencies (credit bureaus) as defined by 15 U.S.C. § 1681a.

70.     GreenSky and its agents, Tri-State, Pompilli and Mr. Roe through each of the above mentioned actions, and as summarized in ¶¶62-67, of false pretenses, violated 15 U.S.C. § 1681q which requires that any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses shall be fined under title 18, United States Code, imprisoned for not more than 2 years, or both.

71.     GreenSky and its agents, Tri-State, Pompilli and Mr. Roe through each of the above mentioned actions, and as summarized in ¶¶62-67, violated 15 U.S.C. § 1681b(f) which requires that "[a] person shall not use or obtain a consumer report for any purpose unless – (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification."

72.     As a result of the criminal and other statutory violations demonstrated above, Bentley has sustained injury, including, actual damages, humiliation, intimidation, abuse, fear, wrongful detention of her property – her deposit of $1,417, mental anguish and pain and suffering

73.     ,As a result of the criminal and other statutory violations demonstrated above, Bentley is entitled to actual damages, statutory damages and punitive damages under 15

11

U.S.C. § 1681n and 15 U.S.C. § 1681o, inter alia.

74.    Defendants violated 15 U.S.C. § 1681q as aforesaid and are therefore liable to plaintiff for damages as required by 15 U.S.C. § 1681n and 15 U.S.C. 1691o.

75.    For defendants' willful violations of the FCRA, 15 U.S.C. § 1681q, Plaintiff is entitled to actual damages, punitive damages, plus attorney's fees and costs pursuant to 15 U.S.C. 1681n, and for defendants' negligent violations of the FCRA, Plaintiff is entitled to actual damages and attorney's fees pursuant to 15 U.S.C. 1691o.

**COUNT THREE**
(TILA)

76.    Paragraphs 1-67 of count one are incorporated in this count three as if fully set forth herein.

77.    Furthermore, GreenSky as a creditor as defined in the Truth-in-Lending Act, 15 U.S.C. § 1602(g) through its agents, Tri-State, Pompilli and Roe provided Plaintiff, without Plaintiff applying for any GreenSky Installment Loan, an open-ended home equity plan for $12,762 for the home improvement work, which installment loan was to be secured by the equity in Plaintiff's residential property, and at an unconscionable interest rate between 17.99% and 23.99%.

78.    GreenSky and its brokers and or agents, Tri-State, Pompilli and Roe never disclosed to the Plaintiff's at the time of the application for the GreenSky Installment Loan, the terms, rates and condition of the GreenSky Installment Loan.

79.    GreenSky through its brokers and or agents, Tri-State, Pompilli and Roe also repeatedly misrepresented to the Plaintiff that the interest rate offered was only 3.9%.

80.    Each of these actions is in violation the Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., more particularly 15 U.S.C. §1637(a) and or 15 U.S.C. §1638(a) and or 15

12

U.S.C. §1638(b)(2)(c), which require full disclosures "at the time an application is provided to the consumer" for the home equity loan, as provided under 12 C.F.R. §226.5b(b) and or §226.19(b). .

81.    As a result of these violations of TILA by GreenSky and or its brokers and or agents, Tri-State, Roe, Pompilli, Plaintiff suffered ascertainable losses, including, but not limited to the deprivation and wrongful detention of Plaintiff's deposit of 10% of the home improvement work quote, or $1,417 deposit, since August 2, 2013.

82.    As a result of the above-described violations of TILA by GreenSky and or its brokers and or agents, Tri-State, Roe and Pompilli, Plaintiff is entitled to her actual damages, plus statutory damages and attorney's fees and costs.

83.    As a result of the above-described violations of TILA and the Connecticut Truth-in-Lending Act , C.G.S.§36a-675 to §36a-685, ("Connecticut TILA"), by GreenSky and or its brokers and or agents, Tri-State, Roe and Pompilli, the Defendants should be referred to the Connecticut State's Attorney's office for prosecution under C.G.S.§36a-681 and for eventual imposition of a fine of not more than five thousand dollars in addition to imprisonment of not more than one year or both.

84.    As a result of the above-described violations of C.G.S.§37-4 and C.G.S. §20-429(e)(3), by GreenSky and or its brokers and or agents, Tri-State, Roe and Pompilli, the Defendants should be referred to the Connecticut State's Attorney's office for prosecution under C.G.S.§37-7 and for eventual imposition of a fine of not more than one thousand dollars in addition to imprisonment of not more than six months.

**COUNT FOUR**
(CUTPA)

13

85.     Paragraphs 1-84 of count three are incorporated in this count four as if fully set forth herein.

86.     Defendants' actions as above described constitute unfair or deceptive act or practices in violation of CUTPA, Conn. Gen. Stat. §42-110(b)a in the conduct of trade or commerce alleged in ¶¶5-8 of count one above, in that the conduct of Defendants as alleged in ¶53 of count one violated the Connecticut Home Improvement Act, Conn. Gen. Stat. § 20-429(e) by virtue of the violation of the Connecticut Home Solicitation Sales Act, Conn. Gen. Stat. § 42-135(a)2.

87.     Pursuant to Conn. Gen. Stat. §20-427(c), a violation of the Connecticut Home Improvement Act, Conn. Gen. Stat. §20-429(e), is deemed an unfair trade or deceptive act or practice under CUTPA, Conn. Gen. Stat. § 42-110(b)a.

88.     Defendants actions constitute unfair or deceptive act or practices in violation of CUTPA, Conn. Gen. Stat. § 42-110(b)a in the conduct of the trade or commerce alleged in ¶¶5-8 of count one, in that the conduct of Defendants as alleged in ¶53 of count one violated the Connecticut Home Solicitation Sales Act, Conn. Gen. Stat. § 42-135(a)2.

89.     Pursuant to Conn. Gen. Stat. §42-141(b), a violation of the Connecticut Home Solicitation Sales Act, Conn. Gen. Stat. §42-135(a)2, is deemed an unfair trade or deceptive act or practice under CUTPA, Conn. Gen. Stat. § 42-110(b)a.

90.     Defendants actions constitute unfair or deceptive act or practices in violation of CUTPA, Conn. Gen. Stat. § 42-110(b)a in the conduct of the trade or commerce alleged in ¶¶5-8 of count one, in that the conduct of Defendants as alleged in ¶¶59-60 of count one violated the Connecticut Home Improvement Act, Conn. Gen. Stat. § 20-429(e)1 and (3).

91.     Pursuant to Conn. Gen. Stat. §20-427(c), a violation of the Connecticut Home

14

Improvement Act, Conn. Gen. Stat. § 20-429(e)1 and (3), is deemed an unfair trade or deceptive act or practice under CUTPA, Conn. Gen. Stat. § 42-110(b)a.

92.     Furthermore, Defendants actions constitute unfair or deceptive act or practices in violation of CUTPA, Conn. Gen. Stat. § 42-110(b)a in the conduct of the trade or commerce alleged in ¶¶5-8 of count one, in that the conduct of Defendants as alleged in ¶51 of count one, in completing and or signing a GreenSky Installment Loan application for Plaintiff without her knowledge or authorization violated the Connecticut criminal statute, C.G.S. §53a-139: Forgery in the second degree: Class D felony.

93.     Furthermore, Defendants actions, further summarized in ¶¶62-67 constitute unfair or deceptive act or practices in violation of CUTPA, Conn. Gen. Stat. § 42-110(b)a in the conduct of the trade or commerce alleged in ¶¶5-8 of count one, in that the conduct of Defendants as alleged violates public policy, is immoral, unethical or unscrupulous, and is substantially injurious to consumers, including the Plaintiff.

94.     The conduct of the Defendants as alleged in this count caused the Plaintiff substantial injury which could not be reasonably avoided and is not outweighed by any countervailing benefit to consumers, including the Plaintiff.

95.     As a result of defendants' false fraudulent conduct, Plaintiff suffered ascertainable losses, including, but not limited to the deprivation of her $1,417 deposit.

96.     As a result of the above-described conduct of the defendants' violations of CUTPA, Plaintiff is entitled to her damages, plus punitive damages and a reasonable attorney's fee.

97.     Plaintiff certifies that, pursuant to CUTPA, Conn. Gen. Stat. § 42-110(g)c, a copy of this Complaint has been electronically mailed, via CUTPA@ct.gov to the Connecticut Attorney General and the Connecticut Commissioner of Consumer Protection.

## COUNT FIVE
### (VICARIOUS LIABILITY)

98.    Paragraphs 1-97 of count four are incorporated in this count five as if fully set forth herein.

99.    GreenSky is vicariously liable for the aforesaid conduct of its brokers and or agents, Tri-State, Pompilli and Roe as alleged herein, as their principal in that the acts of Tri-State, Pompilli and Roe impose liability on GreenSky for the transaction of the GreenSky Installment Loan either because GreenSky expressly gave Tri-State, Pompilli and or Roe authority to bind GreenSky by GreenSky's actions or statement or because the authority of Tri-State, Pompilli and or Roe to do so is implied from the circumstances of the transaction of the GreenSky Installment Loan.

100.    As a result of defendants' conduct, including GreenSky as the principal of Tri-State, Pompilli and Roe, Plaintiff suffered ascertainable losses, including, but not limited to the deprivation of her $1,417 deposit, and mental anguish and pain and suffering.

101.    As a result of the above-described conduct of the Defendants' violations, including GreenSky as the principal of Tri-State, Pompilli and Roe, Plaintiff is entitled to, inter alia, to actual damages, statutory damages, punitive damages, plus attorney's fees and costs pursuant to 15 U.S.C. 1681n; for Defendants' negligent violations of the FCRA, Plaintiff is entitled to actual damages and attorney's fees pursuant to 15 U.S.C. 1681o and; Plaintiff is entitled to her damages, plus punitive damages and a reasonable attorney's fee pursuant to CUTPA.

16

**Wherefore,** Plaintiff claims against each Defendant, jointly and severally,

1. Judgment;

2. Voiding the home improvement transaction contract pursuant to C.G.S. § 42-135(a)(2);

3. Actual money damages pursuant to 15 U.S.C. § 1681n(a)(1)(A) & (B);

4. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

5. Attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3);

6. Actual money damages pursuant to 15 U.S.C. § 1681o(a)(1);

7. Attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2);

8. Actual damages pursuant to 15 U.S.C. §1640(a)(1);

9. Double amount of finance charge pursuant to 15 U.S.C. §1640(a)(2)(A)(i);

10. $4,000 pursuant to 15 U.S.C. §1640(a)(2)(A)(iv);

11. Attorney's fees pursuant to 15 U.S.C. §1640(a)(3);

12. Actual and statutory punitive damages pursuant to C.G.S. § 42-110g(a);

13. Attorney's fees and costs pursuant to C.G.S. § 42-110g(d);

14. An order from the Court ordering defendants to cease and desist from engaging in unfair and deceptive trade practices, and;

15. Such other further relief to which Plaintiff is, at law, or in equity and by statute, entitled to against each defendant, jointly and severally.

**PLAINTIFF, ELISE BENTLEY**

By:

Joseph R. Sastre ct28621
The Law Office of Joseph R. Sastre, LLC.
67 Chestnut Street
Bristol, CT 06010
Tel.: (860) 261-5643
Fax: (860) 261-5786
Joseph.Sastre@gmail.com

## DECLARATION OF PLAINTIFF

Declaration under penalty of perjury. The undersigned declares under penalty of perjury that he/she is the plaintiff in the above action, that he/she has read the above complaint and that the information contained in the complaint is true and correct. 28 USC § 1746; 18 USC § 1621.

Executed at _Bristol, CT_ on _8/11/14_

18