# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ELISE BENTLEY, | |
| Plaintiff, | |
| v. | CASE NO. 3:14-cv-01157-VAB |
| GREENSKY TRADE CREDIT, LLC, TRI-STATE OF BRANFORD, LLC BRAD POMPILLI, AND DAN ROE, | June 26, 2015 |
| Defendants. | |

## DEFENDANT GREENSKY TRADE CREDIT, LLC'S
## LOCAL RULE 56(a)1 STATEMENT

Pursuant to Local Rule 56(a)1, Defendant GreenSky Trade Credit, LLC ("GreenSky") submits the following concise statement of each material fact as to which GreenSky contends there is no genuine issue of material fact to be tried.

## STATEMENT OF MATERIAL FACTS

1.     Defendants Dan Roe ("Roe") and Brad Pompilli ("Pompilli") were employees and co-owners of Defendant Tri-State of Branford, LLC ("Tri-State"; together with Roe and Pompilli, the "Tri-State Defendants") during all times relevant to Plaintiff's allegations in the Complaint.  (ECF No. 38-1, Affidavit of Brad Pompilli ("Pompilli Aff."), ¶ 2; Affidavit of Timothy D. Kaliban ("Kaliban Aff."), ¶¶ 9-10.)

2.     On August 2, 2013, Plaintiff met with Roe to discuss a loan for home improvement work.  (ECF No. 1, Complaint ("Compl."), ¶ 11; ECF No. 68-2, Proposed Amended Complaint ("Prop. Am. Compl."), ¶ 12.)

3.     Plaintiff entered into a contract with Tri-State for Tri-State to perform certain home improvement services for Plaintiff, which Plaintiff signed.  (Plaintiff's Interrog. Resp., p.

6, No. 2 (attached to GreenSky's Memorandum in Support of its Motion for Summary Judgment as Exhibit A); Plaintiff's RFA Resp., p. 4, No. 6 (attached to GreenSky's Memorandum in Support of its Motion for Summary Judgment as Exhibit B.))

4.       In connection with Plaintiff's contract with Tri-State, Plaintiff paid to Tri-State a 10% down payment, in the amount of $1,417.00.  (Pl. Interrog. Resp., p. 6, No. 2 & p. 14, No. 12; Kaliban Aff., ¶¶ 15-16; ECF No. 76, Plaintiff's Reply to Opposition to Motion to Join ("Pl. Reply to Opp. to Join"), p. 8.)

5.       During the August 2, 2013 meeting with Roe, Plaintiff signed a "Home Improvement Consumer Credit Application" from GE Capital Retail Bank.  (Kaliban Aff., ¶ 16, Ex. C; Pl. RFA Resp., p. 4, No. 2.).

6.       GreenSky is a third-party service provider that partners with lenders that fund the loans under the GreenSky® program (the "Program").  (Kaliban Aff., ¶ 4.)

7.       GreenSky and Tri-State were parties to a GreenSky Consumer Credit Program Agreement (the "Dealer Agreement"), pursuant to which Tri-State's qualified customers could obtain financing through an unsecured installment loan offered by a financial institution participating in the Program to be used to finance Tri-State's home improvement services. (Kaliban Aff., ¶¶ 5-6, Ex. A.)

8.       The contractual relationship set forth in the Dealer Agreement was the only relationship between GreenSky and the Tri-State Defendants.  (Kaliban Aff., ¶ 7.)

9.       The Dealer Agreement expressly refutes the existence of any agency relationship between GreenSky and Tri-State and makes clear that Tri-State is responsible for the actions of Tri-State's employees.  (Kaliban Aff., ¶ 8 & Ex. A. ¶¶ 30-31.)

Active 26233638v1 234053.000032

10.     Specifically, the Dealer Agreement states:

> **30.     Independent Contractor.**  This Agreement does not and shall not be construed to establish a partnership, joint venture, agency relationship, or other form of business association between [Tri-State] and GreenSky.
>
> **31.     Actions of Employees.** Dealer is responsible for the actions of its employees …

(Kaliban Aff., Ex. A. ¶¶ 30-31.)

11.     Tri-State, and not GreenSky, was responsible for supervising its employees and ensuring that they acted in accordance with the terms set forth in the Dealer Agreement. (Kaliban Aff., ¶ 9.)

12.     The Tri-State Defendants had no authority to approve or reject applications for credit through the Program.  (Kaliban Aff., ¶ 12 & Ex. A ¶ 3.)

13.     The Tri-State Defendants could merely collect credit application information from its customers and submit the information to GreenSky through GreenSky's web portal or over the telephone.  (Kaliban Aff., ¶ 13.)

14.     The Dealer Agreement contains dealer representations and warranties regarding the submission of credit applications and transactions that include, among others, "that Dealer has verified the identity of the customer and … that the credit application … [is] bona fide and [was] actually made and agreed to by each person identified as an applicant or Borrower." (Kaliban Aff., Ex. A, ¶ 11(a).)

15.     On August 6, 2013, Tri-State submitted Plaintiff's information to GreenSky over GreenSky's online web portal, and expressly represented to GreenSky that Plaintiff had applied for an installment loan under the Program.  (Kaliban Aff., ¶ 17.)

3

16.     By submitting Plaintiff's information to GreenSky, Tri-State expressly certified to GreenSky that Plaintiff was physically present and that Plaintiff had physically signed GreenSky's application information form.  (Kaliban Aff., ¶ 18.)

17.     Based on Tri-State's representation to GreenSky that Plaintiff had applied for financing under the Program, GreenSky requested Plaintiff's credit report from Experian in order to evaluate whether Plaintiff qualified for an unsecured installment loan that was offered as part of the Program.  (Kaliban Aff., ¶ 19.)

18.     The decision to approve or deny Plaintiff's credit application was made automatically based on a systematic review of her credit characteristics from the Experian credit report.   (Kaliban Aff., ¶ 20; Pl. Interrog. Resp., p. 10, No. 5(b).)

19.     Plaintiff was approved for an unsecured installment loan (the Loan") from the Bank based on Plaintiff's credit characteristics and the credit policies established by the Bank. (Kaliban Aff., ¶ 21.)

20.     On or about August 6, 2013, GreenSky, on behalf of the Bank, sent a letter to Plaintiff informing her that she had been approved for the Loan.  (Kaliban Aff., ¶ 22 & Ex. E; Pl. Interrog. Resp., pp. 7-8, No. 3.)

21.     As stated in the August 6, 2013 letter, Plaintiff could obtain a copy of her Loan Agreement by logging into GreenSky's website.  (Kaliban Aff., Ex. E.)

22.     The Loan Agreement states that "[t]he first use of the Shopping Pass, Purchasing Card, or the associated Installment Loan to make a purchase will constitute acceptance by (all) Borrower(s) on the terms of the accompanying Installment Loan Agreement."  (Kaliban Aff., Ex. F, p. 2.)

Active 26233638v1 234053.000032

23.     The Loan Agreement also includes, among other things, the terms and conditions of the loan and the federally-mandated Truth in Lending Act and Gramm Leach Bliley Act disclosures.  (Kaliban Aff., Ex. F.)

24.     On or about August 17, 2013 and August 20, 2013, Plaintiff called GreenSky's customer service center to inquire about the loan approval.   (Kaliban Aff., ¶ 26; Pl. Interrog. Resp., p. 8, No. 3.)

25.     After GreenSky learned of Plaintiff's dispute with Tri-State, GreenSky inquired with Tri-State about the transaction with Plaintiff.  (Kaliban Aff., ¶ 28.)

26.     Tri-State faxed to GreenSky copies of documents relating to its transaction with Plaintiff, including the August 2, 2013 contract with Tri-State that Plaintiff signed and the GE Capital Retail Bank loan application that Plaintiff signed.  (Kaliban Aff., ¶¶ 29-30, 32 & Exs. B-C.)

27.     On or about August 26, 2013, Plaintiff spoke with an employee in GreenSky's customer protection office, Mr. Harrison Wigley, about her concerns about the letter notifying her of being approved for the Loan.  (Pl. Interrog. Resp., p. 8, No. 3[1]; Kaliban Aff., ¶ 27.)

28.     On or about August 27, 2013, Tri-State faxed a copy of the application to GreenSky.  (Kaliban Aff., ¶ 29.)

29.     GreenSky had not received a copy of the signed GE Application before Tri-State faxed it to GreenSky on August 27, 2013.  (Kaliban Aff., ¶ 30.)

30.     On or about August 27, 2013, Mr. Wigley emailed Plaintiff a copy of the GE Capital Retail Bank consumer loan application form that Tri-State had faxed to GreenSky

---

[1] In Plaintiff's interrogatory response, Plaintiff states that the August 26, 2013 call occurred on August 27, 2013.  (Plaintiff's Interrog. Resp., p. 8, No. 3.)

Active 26233638v1 234053.000032

pursuant to GreenSky's investigation into Plaintiff's inquiry about the Loan approval.  (Kaliban Aff., ¶ 31.)

31.     Plaintiff declined to accept the Loan and the Loan was never funded.  (Kaliban Aff., ¶ 33.)

32.     GreenSky has no record that Plaintiff ever drew on the Loan or took any of the steps that the Loan Agreement expressly identifies as constituting acceptance of the Loan; *i.e.* "us[ing] the Shopping Pass, Purchasing Card, or the associated Installment Loan to make a purchase[.]"  (Kaliban Aff., ¶ 24 & Ex. F, p. 2.)

33.     GreenSky never received a signed Loan Agreement from Plaintiff, and GreenSky has no record of Plaintiff ever agreeing to borrow money on the Loan.  (Kaliban Aff., ¶ 34.)

34.     Neither the Bank nor any other bank partner of GreenSky closed any loan with Plaintiff.  (Kaliban Aff., ¶ 34.)

35.     No amount of the Loan was ever paid out to Plaintiff, or to Tri-State or any other party, on Plaintiff's behalf).   (Kaliban Aff., ¶ 35.)

36.     GreenSky never demanded payment from Plaintiff on the Loan.  (Kaliban Aff., ¶ 36.)

37.     No trade line was ever opened on any account in connection with the Loan, and no amount of the Loan was ever reported as past due to any consumer reporting agency. (Kaliban Aff., ¶¶ 37, 39.)

38.     No lien relating to the Loan was ever recorded or filed against Plaintiff or any of her Property.  (Kaliban Aff., ¶ 38; Pl. RFA Resp., p. 8, No. 16.)

39.     Plaintiff never attempted to contact any consumer reporting agency to dispute any event relating to the Loan.  (Pl. RFA Resp., p. 7, Nos. 13-14; Pl. Interrog. Resp., p. 11, No. 9.)

6

40.     On October 17, 2013, as a result of Plaintiff's allegations and GreenSky's resulting concern that Tri-State did not adhere to the requirements for submitting applications as set forth, *inter alia*, in the Dealer Agreement, GreenSky requested that Experian remove the reference to GreenSky's August 6, 2013 credit inquiry from Plaintiff's credit report.  (Kaliban Aff., ¶ 40, Ex. G.)

This 26th day of June, 2015.

/s/ _____
Alexandria J. Reyes* (phv07133)
Georgia Bar No. 428936
600 Peachtree Street, N.E., Suite 5200
Atlanta, GA  30308
Phone: (404) 885-3828
Fax:    (404) 962-6733
Email: alex.reyes@troutmansanders.com
*Admitted pro hac vice

James A. Wade (ct00086)
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
Phone: (860) 275-8200
Fax:    (860) 275-8299
Email: jwade@rc.com

*Counsel for Defendant GreenSky Trade Credit, LLC*

Active 26233638v1 234053.000032

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing ***Defendant GreenSky Trade Credit,***

***LLC's Local Rule 56(a)(1) Statement*** was filed electronically and served by mail on anyone

unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by

operation of the Court's electronic filing system or by mail to anyone unable to accept electronic

filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the

Court's CM/ECF System.

This 26th day of June, 2015.

/s/_____
Alexandria J. Reyes* (phv07133)
Georgia Bar No. 428936
600 Peachtree Street, N.E., Suite 5200
Atlanta, GA  30308
Phone: (404) 885-3828
Fax:    (404) 962-6733
Email: alex.reyes@troutmansanders.com

*Admitted pro hac vice*
*Counsel for Defendant GreenSky Trade Credit, LLC*

Active 26233638v1 234053.000032