UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

ELISE BENTLEY,
        Plaintiff,

v.                                                    CASE NO. 3:14-cv-1157 (VAB)

TRI-STATE OF BRANFORD, LLC,
BRAD POMPILLI, and DAN ROE,
        Defendants.

## RULING ON PLAINTIFF'S MOTION FOR RECONSIDERATION

Plaintiff, Elise Bentley, filed this lawsuit against a loan servicer, GreenSky Trade Credit, LLC ("GreenSky"), a company that performs home improvements, Tri-State of Branford, LLC ("Tri-State"), and two individuals affiliated with Tri-State, Brad Pompilli, and Dan Roe. Compl., ECF No. 1. She claims that Tri-State applied for a loan in her name from GreenSky without her permission and that this behavior violated a number of laws. *See* Ruling on Pl.'s Mot. for Joinder and GreenSky's Mot. for Summ. J. ("Prior Ruling"), ECF No. 100.[1]

In its most recent ruling, the Court denied Ms. Bentley's request to add another Defendant to the case, Union First Market Bank, because she failed state any viable legal claims against the bank. *See id.* It also granted summary judgment in GreenSky's favor on all claims. *Id.* Ms. Bentley has filed a motion asking the Court to reconsider aspects of this ruling. Mot. For Reconsideration, ECF No. 101. For the following reasons, her motion is **DENIED**.

### I.    Standard

Motions for reconsideration are governed by Federal Rule of Civil Procedure 59(e), allowing the alteration of a judgment, and this District's Local Rule 7(c). The standard for granting such a motion is "strict." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995)

---

[1] As the Court summarized the factual and procedural history of this case in its prior ruling, it will not do so in detail here.

1

(citations omitted). "The only permissible grounds on which to grant a motion for reconsideration are: (1) an intervening change in the law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice." *Martin v. Dupont Flooring Sys., Inc.,* No. Civ.A. 301CV2189(SUR), 2004 WL 1171208, at *1 (D. Conn. May 25, 2004) (citing *Doe v. New York City Dep't of Soc. Servs.,* 709 F.2d 782, 789 (2d Cir.), *cert. denied sub nom.*, *Catholic Home Bureau v. Doe*, 464 U.S. 864 (1983)). A motion to reconsider "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader,* 70 F.3d at 257 (citations omitted).

**II.     Discussion**

Ms. Bentley argues that the Court's analysis of her claim under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 *et seq.*, and vicarious liability contains legal errors. She contends that she has viable FCRA claims against Union First Market Bank and GreenSky. She also argues that Union First Market Bank and GreenSky may be held vicariously liable for the actions of the other Defendants in this case. The Court will address her arguments regarding each of these claims in turn.

**A.  FCRA Claims**

As the Court explained in its Prior Ruling, the FCRA controls the circumstances under which both credit reporting agencies and other third parties may access a consumer's credit report. In particular, the Act requires consumer reporting agencies and users to access consumer reports for a permissible purpose, meaning one specifically enumerated in the statute. 15 U.S.C. §1681b(a) ("any consumer report agency may furnish a consumer report under the following circumstances and no other…"); *id.* §1681b(f) ("A person shall not use or obtain a consumer

report for any purpose unless [ ] the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section…").

The Court dismissed the FRCA claim against GreenSky because Ms. Bentley failed to produce evidence that GreenSky obtained Ms. Bentley's credit report without a permissible purpose under the Act.  Prior Ruling 30, ECF No. 100.  It found that Ms. Bentley failed to allege the same with respect to Union First Market Bank.  *Id.* at 9.  In reaching this conclusion, the Court reasoned that the evidence and allegations, respectively, indicated that both parties had accessed Ms. Bentley report for an enumerated, permissible purpose under 15 U.S.C. §1681b(a)(3)(A).  *Id.* at 9, 30.  Section 1681b(a)(3)(A) provides that "any consumer reporting agency may furnish a consumer report… [t]o a person which it has reason to believe [ ] intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer…."  The Court concluded that because Ms. Bentley both proved and alleged, respectively, that GreenSky and Union First Market Bank believed that they had accessed her credit report in connection with financing on her proposed home improvement project, they complied with the FCRA.

Ms. Bentley argues that the Court erred in interpreting the text of the FRCA and overlooked controlling authorities.  Pl.'s Br. 4-7, ECF No. 101-1.  Neither of these arguments provide grounds for reconsideration.

**1. Interpreting the Text of the FCRA**

First, Ms. Bentley argues that the Court erred in analyzing section 1681b(a)(3)(A) of the FCRA, because it applied the "reason to believe" standard, enumerated in subsection (a)(3)(A), to users of credit reports like GreenSky and Union First Market Bank.  Pl.'s Br. 5-6, ECF No.

3

101-1.  She contends that the "reason to believe" inquiry only applies to credit reporting agencies and the Court should have determined whether GreenSky and Union First Market Bank "intended" to use Ms. Bentley's credit report "in connection with a credit transaction."  The Court disagrees with Ms. Bentley's interpretation of the statute, but also finds that even if her interpretation governed, her claims against GreenSky and Union First Market Bank would have been dismissed.

A consumer reporting agency may furnish a consumer report under any of several different circumstances listed in section 1681b(a) of the FCRA.  Section 1681b(f) provides that "[a] person shall not use or obtain a consumer report for any purpose unless [ ] the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section…."  Subsection (f), therefore, applies all of the requirements of subsection (a), including (a)(3)(A), to users like GreenSky and Union First Market Bank.  *See Braun v. United Recovery Sys., LP*, 14 F. Supp. 3d 159, 165 (S.D.N.Y. 2014) (observing that "because 'even consumer reporting agencies acting in complete good faith cannot prohibit illicit use of consumer information if users are not bound to obtain consumer reports only for permissible purposes,' 'the FCRA also extends to the conduct of parties who *request* credit information.'") (emphasis in original) (quoting *Stonehart v. Rosenthal*, No. 01-CV-651, 2001 WL 910771, at *3 (S.D.N.Y. Aug. 13, 2001)); *Geiling v. Wirt Fin. Servs., Inc.*, No. 14-11027, 2014 WL 8473822, at *17 (E.D. Mich. Dec. 31, 2014) ("Section 1681b(f) applies the permissible purpose list in §1681b(a) to users.  That is, the user can 'use' the report for any of the reasons listed in §1681b(a).") (citation omitted).

Several courts have found that section 1681b(f) applies the "reason to believe" aspect of section 1681b(a)(3)(A) to users.  In other words, courts have held that to comply with this

4

provision, the party requesting the report must have had "reason to believe" that it sought the report "in connection with a credit transaction."  *See e.g.*, *Geiling*, 2014 WL 8473822, at *18 ("[Section 1681b(a)(3)] provides that the reporting agency can furnish a report if it 'has reason to believe' that the prospective user 'intends to use the information' for certain purposes. Extrapolating this to user liability, courts have concluded that a user must merely have a 'reason to believe' a permissible purpose exists in order to escape liability.") (citations omitted); *Alston v. Cent. Credit Servs., Inc.*, Civil Action No. DKC 12-2711, 2013 WL 4543364, at *2 (D. Md. Aug. 26, 2013) ("[Section 1681b(a)(3)(A)'s] 'reason to believe' standard has likewise been applied to users of the reports… [T]his means that if a user had a reason to believe that a consumer owed a debt, it would have a permissible purpose to access the consumer's credit report.") (citations omitted); *Wells v. Craig & Landreth Cars*, CIVIL ACTION NO. 3:10-CV-00376, 2010 U.S. Dist. LEXIS 123332, at 6 (W.D. Ky. Nov. 18, 2010) ("Section 1681b allows a lender to access a potential borrower's credit report if the lender has reason to believe the information is to be used 'in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer.'") (quoting 15 U.S.C. §1681b(a)(3)(A) and citing 1681b(f)(1)).

      However, even if Ms. Bentley's interpretation of section 1681b(a)(3)(A) is correct as a matter of law, and the Court should not have applied the "reason to know" standard to GreenSky and Union First Market Bank, her FCRA claims still fail for the same reasons the Court articulated in its Prior Ruling.  Under Ms. Bentley's reading of section 1681b(a)(3)(A), GreenSky and Union First Market Bank complied with the statute if they "intended" to use the credit report "in connection with a credit transaction involving the consumer on whom

information is to be furnished and involving the extension of credit to… the consumer." 15 U.S.C. §1681b(a)(3)(A).  As the Court noted in its Prior Ruling, Ms. Bentley provides no evidence that GreenSky did not intend to access Ms. Bentley's report for this purpose.  Indeed, she provided evidence supporting the conclusion that GreenSky accessed Ms. Bentley's credit report for the sole purpose of extending her credit.  Ms. Bentley also provided no evidence that the credit reporting agency that GreenSky contacted would have had "reason to believe" that GreenSky's request did not derive from this intention.  Ms. Bentley also did not allege any facts indicating that Union First Market Bank intended to access the report for purposes other than to extend her credit, or that the credit reporting agency that was contacted had any "reason to believe" that Union First Market Bank's request derived from another motive.  Thus, Ms. Bentley's argument that the Court misinterpreted the FCRA does not warrant a reversal of the Court's ruling.

### 2. "Controlling" Authorities

Second, Ms. Bentley argues that GreenSky and Union First Market Bank could not have satisfied section 1681b(a)(3)(A) because the proposed loan transaction did not involve Ms. Bentley.  Pl.'s Br. 7, ECF No. 101-1.  In making this point, she contends that the Court erred in relying on *Trikas v. Universal Card Services Corporation*, 351 F. Supp. 2d 37 (E.D.N.Y. 2005), instead of circuit precedent Ms. Bentley labels "controlling."  Pl.'s Br. 6, ECF No. 101-1.  She directs the Court to two Ninth Circuit cases, *Pintos v. Pacific Creditors Association*, 565 F.3d 1106 (9th Cir. 2009) ("*Pintos I*"), *amended on denial of petition for rehearing* 605 F.3d 665 (9th Cir. 2009) ("*Pintos II*"), and *Andrews v. TRW, Inc.*, 225 F.3d 1063 (9th Cir. 2000), *rev'd on other grounds by TRW Inc. v. Andrews*, 534 U.S. 19 (2001).  In this portion of her analysis, she also cites a Sixth Circuit case, *Bickley v. Dish Network, LLC*.  751 F.3d 724 (6th Cir. 2014).

First of all, none of these is "controlling" or binding on this Court. *See Scarsdale Cent. Serv. Inc. v. Cumberland Farms, Inc.*, No. 13-cv-8730 (NSR), 2014 WL 2870283, at *2 (S.D.N.Y. June 24, 2014) ("'Controlling decisions include decisions from [the United States Supreme Court and] the United States Court of Appeals for the Second Circuit; they do not include decisions from other circuits or district courts…'") (quoting *Heffernan v. Straub*, 655 F. Supp. 2d 378, 380-81 (S.D.N.Y. 2009) (alteration in original)).

Second, none of these cases requires reversal of the Court's decision. All of them discuss the degree of a consumer's involvement necessary for a transaction to fall within the ambit of the permissible purpose articulated in section 1681b(a)(3)(A). In *Pintos* and *Andrews*, the Ninth Circuit held that subsection (a)(3)(A) did not provide a permissible purpose for accessing the plaintiffs' credit report because the plaintiffs had not initiated the transactions at issue. *Pintos I*, 565 F.3d at 1113[2]; *Andrews*, 225 F.3d at 1067. However, Ms. Bentley's situation is readily distinguishable from these cases.

In *Andrews*, the plaintiff's personal information was stolen. *Andrews*, 225 F.3d at 1065. Here, Ms. Bentley admits that she voluntarily provided her personal information to Tri-State and that she discussed the possibility of some kind of financing. *See Stergiopoulos & Invelisse Castro v. First Midwest Bancorp, Inc.*, 427 F.3d 1043, 1046-47 (7th Cir. 2005) (finding that where the plaintiffs requested financing, but did not know which particular financial entity would request their credit reports, they were "involved" in the credit transaction and distinguishing that circumstance from "[t]he plaintiff in *Andrews* [who] was a bystander, unwittingly 'involved' because of an imposter's deception."). Her contention that the form she completed with her

---

[2] This holding drew well-reasoned dissenting opinions. *Pintos I*, 565 F.3d at 1117 (Bea, J., dissenting) *Pintos II*, 605 F.3d at 670 (Konzinski, J., dissenting). However, the Court assumes the validity of the majority view in its analysis.

7

personal information was voided after she signed it does not change the fact that she voluntarily provided that information.

In *Pintos,* the plaintiff's car was towed and, when he failed to claim it, was sold to pay for the cost of the towing. *Pintos I*, 565 F.3d at 1110. Because the proceeds from the sale of the car did not cover the entire cost of the tow, a collection agency ran his credit report in connection with its efforts to collect the debt. *Id.* at 1110-11. Again, as in *Andrews*, the plaintiff in *Pintos* was not aware of the transaction and had never provided his personal information to facilitate it. In contrast, Ms. Bentley voluntarily provided her personal information to Tri-State.

*Bickley* involved an identity thief who sought to open an account with the defendant's retailer to receive satellite television services from the defendant in the plaintiff's name. 751 F.3d at 726. Thus, just as with *Andrews*, this case involves stolen personal information and is factually distinguishable from the current case. In addition, the result in *Bickley* supports the Court's analysis, because the Sixth Circuit affirmed a grant of summary judgment in the defendant's favor.

### B. Vicarious Liability

Ms. Bentley contends that the Court erred in analyzing the legal requirements of an agency relationship. Pl.'s Br. 8-10, ECF No. 101-1. She makes two arguments in favor of reconsideration. Neither warrants reversal of the Court's ruling.

#### 1. Application of the Agency Standard

First, Ms. Bentley contends that the Court erred in analyzing whether an agency relationship existed by focusing on the control the Defendants had over each other rather than their control over the transaction at issue. *Id.* at 8-9. She argues that the evidence shows that

8

GreenSky had ample control over all aspects of the loan transaction, even if it did not have control over the conduct of the other Defendants generally. *Id.* at 9.

Ms. Bentley's argument misapprehends the Court's ruling. The Court held that Ms. Bentley "failed to produce evidence that GreenSky exercised a sufficient amount of control over [the other Defendants]." Prior Ruling 26, ECF No. 100. In reaching this conclusion, the Court analyzed the relationship between the parties with respect to the transaction at issue, the issuance of a loan to Ms. Bentley.[3] Thus, it did not commit the legal error that Ms. Bentley claims.

To the extent she makes this argument with respect to Union First Market Bank, she fails to show that the Court committed legal error for the same reason.

### 2. The Non-Delegable Duty Doctrine

Second, Ms. Bentley argues that the Court failed to address her non-delegable duty arguments and that such an omission is grounds for reversal of the Court's decision that Union First Market Bank should not be added to the case. Pl.'s Br. 9-10, ECF No. 101-1. She does not specifically address this criticism to the Court's analysis of GreenSky's vicarious liability, but the Court assumes her arguments apply to both Defendants.

While the Court did not explicitly use the words "non-delegable duty" in its ruling, it considered and rejected the argument by holding that neither GreenSky nor Union First Market Bank could be held vicariously liable for the conduct of the other Defendants. Prior Ruling 6-7, 26-27, ECF No. 100. The non-delegable duty doctrine is a rule of vicarious liability that holds that, in certain circumstances, a party may not "contract out the performance of [a ] duty" to avoid liability for a breach of that duty. *Gazo v. City of Stamford*, 255 Conn. 245, 255 (2001); *Smith v. Town of Greenwich*, 278 Conn. 428, 458 (2006); *accord Meyer v. Holley*, 537 U.S. 280,

---

[3] The fact that the Court analyzed the contract between GreenSky and Tri-State that applied to other transactions does not indicate otherwise, as that contract also applied to the transaction at issue in this case.

9

290 (2003) ("[A] nondelegable duty is an affirmative obligation to ensure the protection of the person to whom the duty runs.") (citation and internal quotation marks omitted). Thus, in holding that neither Union First Market Bank nor GreenSky could be held vicariously liable for the conduct of the other Defendants, the Court addressed Ms. Bentley's non-delegable duty argument.

Ms. Bentley's Motion for Reconsideration does not raise any new arguments or cite any new cases on this issue. Thus, the Court has no obligation to address the matter any further. *See Shrader*, 70 F.3d at 257 ("[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided."). For the sake of clarity, however, the Court will explain its conclusion more specifically here.

The non-delegable duty doctrine "goes further" than traditional vicarious liability principles and only applies in special circumstances, typically created by the law or contracts. *See Meyer*, 537 U.S. at 290; *Machado v. City of Hartford*, 292 Conn. 364, 371 (2009) ("Nondelegable duties generally are imposed, most often by statute, contract or common law…"); Restatement (Second) of Contracts §318(1) (1981) ("An obligor can properly delegate the performance of his duty to another unless the delegation is contrary to public policy or the terms of his promise."); Restatement (Third) of Agency §7.06 (2006) ("A principal required by contract or otherwise by law to protect another cannot avoid liability by delegating performance of the duty, whether or not the delegate is an agent."). Non-delegable duties are imposed "in recognition of 'the policy judgment that certain obligations are of such importance that [defendants] should not be able to escape liability merely by [delegating them to others]." *Machado*, 292 Conn. at 371 (citation omitted). There are no special circumstances here that warrant applying the non-delegable duty doctrine.

Neither GreenSky nor Union First Market Bank made any promises that created a non-delegable duty relevant to the claims in this case. In her Motion for Reconsideration, Ms. Bentley fails to identify any promise GreenSky made to the other Defendants in this case that created a non-delegable duty. With respect to Union First Market Bank, Ms. Bentley argues that the "undisputed evidence shows that the Bank has the responsibilities to 'direct and supervise… the [GreenSky] Program's operation…' and the Bank does 'not delegate [its] lending authority' under the Program and that the loan 'applications are processed… at the direction of' [the] Bank." Pl.'s Br. 9-10, ECF No. 101-1 (citing Pl.'s Ex. 4, GreenSky Letter dated Dec. 18, 2014, ECF No. 93-4).[4] However, this language does not create a non-delegable duty that is relevant to issues in this case. It indicates that GreenSky's bank partners assess whether to make a loan to consumers through the GreenSky program based on their own criteria. But Ms. Bentley failed to plead that the bank delegated any of this authority to GreenSky or Tri-State in her Proposed Amended Complaint.[5]

The law does not apply a non-delegable duty running from loan servicers like GreenSky or lenders like Union First Market Bank to borrowers like Ms. Bentley.[6] Indeed, Ms. Bentley failed to cite a single case where a court applied the doctrine to circumstances similar to this case. The cases cited instead apply the non-delegable duty doctrine to property owners whose property is accessed by members of the public. *See e.g.*, *Gazo*, 255 Conn. at 246-48, 255-57

---

[4] Ms. Bentley's reliance on this evidence, which was submitted in opposition to GreenSky's Motion for Summary Judgment, is also misplaced. In evaluating whether Union First Market Bank should be in the lawsuit, the Court's inquiry was limited to the Proposed Amended Complaint. *See* Prior Ruling 4-5, ECF No. 100 (laying out the relevant standard of review). Ms. Bentley's Motion for Joinder was essentially a motion to amend her Complaint. Thus, the dispositive question was not whether evidence supported the claims against Union First Market Bank but rather whether the claims were plausibly alleged based on the content of the Complaint.

[5] Indeed, the evidence shows that Tri-State's only role was to collect personal information for potential loan applicants and that it had no authority to bind GreenSky or Union First Market Bank legally to providing a given loan. Prior Ruling 26-27, ECF No. 100.

[6] Moreover, with respect to the bank, the Court specifically found that the statute Ms. Bentley cited in support of her vicarious liability argument, 12 U.S.C. §1867(c), could not sustain her claim. Prior Ruling 6-7, ECF No. 100

11

(applying the non-delegable duty doctrine to a slip and fall tort case doctrine to find that the owner of a premises could not contract out the performance of its duty to keep the premises safe for members of the public who entered); *Sola v. Wal-Mart Stores, Inc.*, 152 Conn. App. 732, 734, 742-44 (2014) (same).

*Osborne v. Bank of America, National Associate*, 234 F. Supp. 2d 804 (M.D. Tenn. 2002) is also inapposite. In Osborne, the Middle District of Tennessee found that a plaintiff could proceed against a bank on the theory that the bank had a non-delegable duty to ensure that it did not issue loans in a discriminatory way under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §1691 *et seq.*, is inapposite. The ECOA prohibits discrimination in credit transactions. *Id.* Ms. Bentley has alleged no claims under the ECOA; thus, it is difficult to imagine how *Osborne* could apply to the facts in this case. Even if Ms. Bentley did raise an ECOA claim, *Osborne* is not binding on this Court and, as such, cannot present a basis for reconsideration.[7]

### III.    Conclusion

For all of the foregoing reasons, Ms. Bentley's Motion for Reconsideration, ECF No. 101, is **DENIED**.

SO ORDERED this 6th day of May 2016 at Bridgeport, Connecticut

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

[7] In any event, the logical premise behind the application of the non-delegable duty theory to the ECOA has been affected by subsequent changes in the law. The initial Tennessee District Court case that applied the non-delegable duty doctrine to the ECOA premised its holding on an analogy to the Fair Housing Act, 42 U.S.C. §§3604-05, where the Sixth Circuit found a non-delegable duty not to discriminate. *Coleman v. Gen. Motors Acceptance Corp.*, 196 F.R.D. 315, 325 n.21 (M.D. Tenn. 2000). The Supreme Court overruled the applicability of the non-delegable duty doctrine to the Fair Housing Act in *Meyer v. Holley*, 537 U.S. 280, 289-91 (2003). Thus, in addition to the fact that *Osborne* involves a statute not at issue in this case, the basis for *Osborne*'s holding may no longer exist.